HOGAN LOVELLS US LLP
Michelle Roberts Gonzales (Bar. No. 292075)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone:     (310) 785-4600
Facsimile:     (310) 785-4601
michelle.roberts.gonzales@hoganlovells.com

Sean Marotta (*pro hac vice application pending*)
555 Thirteenth Street, NW
Washington, DC 20004
Telephone:     (202) 637-5600
Facsimile:     (202) 637-5910
sean.marotta@hoganlovells.com

Nathaniel Nesbitt (*pro hac vice application pending*)
1601 Wewatta Street, Suite 900
Denver, CO 80202
Telephone:     (303) 899-7300
Facsimile:     (303) 899-7333
nathaniel.nesbitt@hoganlovells.com

*Attorneys for Plaintiffs National*
*Electrical Manufacturers Association and*
*American Lighting Association*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ELECTRICAL MANUFACTURERS ASSOCIATION and AMERICAN LIGHTING ASSOCIATION, | Case No.  2:19-at-1169 |
| Plaintiffs, | **VERIFIED COMPLAINT** |
| v. | [28 U.S.C. §§ 1331, 1343; 42 U.S.C. § 6306(c)(1)] |
| CALIFORNIA ENERGY COMMISSION; DAVID HOCHSCHILD, Chairman, and JANEA A. SCOTT, KAREN DOUGLAS, J. ANDREW McALLISTER, and PATTY MONAHAN, Commissioners, in their official capacities, | |
| Defendants. | |

Plaintiffs National Electrical Manufacturers Association ("NEMA") and American Lighting Association ("ALA") respectfully state the following claims for declaratory and injunctive relief against Defendants the California Energy Commission and its Chairman and Commissioners in their official capacities (collectively, "CEC"):

## Nature of the Action

1.      This is a civil action seeking declaratory and injunctive relief under the Supremacy Clause of the U.S. Constitution and the Energy Policy and Conservation Act as amended (42 U.S.C. § 6291 *et seq*.) ("EPCA").  This action challenges the constitutionality of the CEC's application of a 45-lumens-per-watt energy conservation standard,[1] effective January 1, 2020, as applied to five types of light bulbs ("lamps" in EPCA).  Those five lamps are subject to federal energy conservation standards that are different from, and conflict with, the standard California seeks to impose.  The five types of lamps at issue are: (1) incandescent reflector lamps, (2) intermediate base incandescent lamps, (3) candelabra base incandescent lamps, (4) rough service incandescent lamps, and (5) vibration service incandescent lamps (hereinafter, the "five federally-covered lamps").  EPCA expressly preempts the application of the CEC's 45-lumens-per-watt standard to the five federally covered lamps.  *See* 42 U.S.C. § 6297(c).  While EPCA recognizes limited exceptions to federal preemption, California enjoys no exception to preemption with respect to the five federally covered lamps.

2.      This action further seeks declaratory and injunctive relief under the Supremacy Clause of the U.S. Constitution and conflict-preemption principles.  This action challenges the constitutionality of the CEC's broad definition of "general service lamp" because it conflicts with the federal definition of that term and presents an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as set forth in EPCA.  The CEC asserts that Congress provided California with an exception to preemption in order to regulate the lamps embraced by California's expanded definition

---

[1]      Energy efficiency standards for light bulbs are typically expressed in terms of a minimum ratio of light output to power required, "lumens/watt"; they are also sometimes expressed in terms of maximum energy use such as a cap on wattage allowed for a given type of light bulb.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   of "general service lamp," including the five federally covered lamps.  But even if an

2   exception were available in theory under EPCA, it is unavailable in this case because the

3   California definition of "general service lamp" is not co-extensive, and conflicts, with the

4   federal definition.

5       3.   This action arises out of the CEC's adoption, on November 13, 2019, of a

6   rule amending Title 20 of the California Code of Regulations in Docket 19-AAER-04 that

7   expanded the definition of "general service lamp" to include (among other lamp types)[2]

8   the five federally covered lamps, and applied a 45-lumens-per-watt energy conservation

9   standard to those additional lamps.  20 C.C.R. §1605.3(k)(2) and Table K-8.  A copy of

10  the regulation containing the expanded definition of "general service lamp" that CEC

11  adopted on November 13, 2019 is attached as Exhibit A.  Before this amendment, Title

12  20's definition of "general service lamp" mirrored the federal definition.  But California's

13  new definition now conflicts with the federal version, which includes neither the five

14  federally covered lamps nor a number of additional lamps that California's definition now

15  purports to embrace.  *Compare* 42 U.S.C. § 6291(30) (BB) *and* 10 C.F.R. § 430.2 *with*

16  Exhibit A.  Because these lamps cannot meet a 45-lumens-per-watt standard, the

17  amendment effectively bans the sale of the five federally covered lamps in California on

18  and after January 1, 2020, a mere six weeks after adoption of the rule.

19      4.   NEMA and ALA request that the application of the 45-lumens-per-watt

20  standard to the five federally covered lamps and enforcement of the CEC's expanded

21  definition of "general service lamp" be enjoined.  Plaintiffs represent a broad spectrum of

22  light-bulb manufacturers and light bulb resellers that will be irreparably harmed if

23  California is permitted to act outside of, and in conflict with, the federal energy efficiency

24  regulatory regime.  In short, manufacturers will be forced to cease the sale and delivery of

25  _____

26  [2]   Among the other lamp types swept into the CEC's expanded definition of "general service lamp"
    that are not included in the federal definition are:  medium base 3-way lamps, medium base shatter-resistant

27  incandescent lamps, medium base incandescent lamps with a light output ranging from 2601 lumens to 3300
    lumens, medium base decorative lamps (with B, BA, CA, F, and G-shape bulbs), medium base tubular (T-
    shape bulb) lamps, certain medium base S-shape bulb lamps, and certain lamps with specialty bases such as

28  pin-base, wedge base, and the like.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    the five federally covered lamps and other lamps in California; to alter product

2    distribution and warehousing in and out of California; and to bear the logistical and

3    supply-chain burden of supplying the five federally covered lamps and other lamps to all

4    but California and the several states that have followed California's lead and put similar

5    regulations in place (e.g., Vermont); and as a result will be unable effectively to meet their

6    customers' needs in California and across the country.  Customers for the five federally

7    covered lamps and other affected lamps with California retail and wholesale operations

8    will be forced to cease the sale of products lawfully purchased and sold, to remove

9    products from store shelves and inventory, and to terminate outstanding orders with

10    manufacturers that NEMA and ALA represent.

11    **Jurisdiction and Venue**

12         5.      This action arises under the Supremacy Clause of the U.S. Constitution,

13    Article VI, Section 2, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

14         6.      This Court has subject matter jurisdiction over this action under 28 U.S.C.

15    § 1331 (federal question jurisdiction), 28 U.S.C. § 1343(a)(3) (jurisdiction to redress

16    constitutional violations), and 42 U.S.C. § 6306(c)(1), which vests federal district courts

17    with jurisdiction over actions brought by "any adversely affected person to determine

18    whether a State or local government is complying with the requirements of [EPCA]."

19    Venue in this Court is proper under 28 U.S.C. § 1391(b).  This Court is authorized to issue

20    a declaratory judgment under 28 U.S.C. §§ 2201, 2202.

21    **Parties**

22         7.      Plaintiff NEMA is an Internal Revenue Code § 501(c)(6) not-for-profit

23    corporation organized under the laws of Delaware, with its principal place of business in

24    Rosslyn, Virginia.  It represents manufacturers of electrical products, including

25    manufacturers of the five federally covered lamps as well as other lamp types impacted by

26    the CEC's November 13, 2019 regulation.  NEMA represented the interests of its

27    members during the CEC rulemakings resulting in the challenged regulation and it

28    represents those interests in this suit.

1      8.     Plaintiff ALA is a not-for-profit trade association headquartered in Dallas,

2  Texas.  It represents companies that operate retail lighting showrooms, staffed by the most

3  knowledgeable people in the industry, offering lighting, ceiling fans and control

4  products.  ALA's membership also includes lighting manufacturers, manufacturer

5  representatives, and other lighting professionals.  ALA members operate 107 lighting

6  showroom stores in California.  ALA members sell the five federally covered lamps as

7  well as other lamp types impacted by the CEC's November 13, 2019 regulation expanding

8  the definition of "general service lamp."  ALA represented the interests of its members

9  during the CEC rulemakings resulting in the challenged regulation and it represents those

10  interests in this suit.

11      9.     Defendant CEC is an agency of the State of California, located in

12  Sacramento.  The CEC is authorized by state statute to promulgate and enforce appliance

13  energy efficiency standards, including for lighting.  *See* Cal. Pub. Res. Code § 25402.

14  Defendant David Hochschild is the Chairman and a Commissioner of the CEC.

15  Defendant Janea A. Scott is the Vice Chair and a Commissioner of the CEC.  Defendants

16  Karen Douglas, J. Andrew McAllister, and Patty Monahan are each CEC Commissioners.

17  **I.      Background**

18          **A.      NEMA and ALA members operate in a standardized, global**

19                  **lighting supply chain that will be adversely affected by a**

20                  **patchwork of state efficiency regulations.**

21      10.    In 2018, NEMA members and other manufacturers shipped an estimated

22  200 million units of the five federally covered lamps in the United States.  They also ship

23  millions of bulbs that are not among the five federally covered lamps but that are included

24  in the CEC's expanded definition of "general service lamps."  California represents

25  approximately 11–12% of the country's light bulb market.

26      11.    The manufacture and distribution of light bulbs occurs over a lengthy

27  period of time and across global supply chains.  From retail order, production, shipment to

28  a retail or wholesale distribution center, and then delivery to a retail store or electrical

1   distributor or contractor, and ultimately to retail purchase by consumers or electricians,

2   the process can range from 4 to 12 months or longer, with variations depending on the

3   type of light bulb, the location of the retail store, and other factors.  Some light bulbs,

4   particularly specialty bulbs like those at issue here, spend more time on retail store shelves

5   than others.  The U.S. Department of Energy ("DOE") recently summarized the

6   complexities of light-bulb distribution.  *Energy Conservation Program:  Definition for*

7   *General Service Lamps*, 84 Fed. Reg. 46,661, 46,671–72 (Sept. 5, 2019).

8         12.     Some of the larger retailers have contracts with manufacturer-suppliers that

9   require the manufacturer to maintain a "safety stock" of lamps in inventory to meet

10   customer demands.  *Id.* at 46,671–72.  Similarly, some retailers require manufacturers to

11   repurchase products that do not comply with applicable law.  The CEC's expansion of the

12   definition of "general service lamp," which conflicts with the federal definition, has

13   created significant uncertainty in the market among retailers, ALA member lighting

14   showrooms, and their suppliers.  If retailers and ALA member lighting showrooms

15   withdraw from shelves and inventory products that are lawful under *federal* law because

16   of the threat of imminent *state* enforcement, empty shelves may persist for some time.

17   *See id.* (describing procurement cycles, lead times, and stocking considerations).  This

18   situation presents substantial logistical problems and significant additional expense for

19   retailers, ALA member lighting showrooms, distributors, and their manufacturer-suppliers

20   relating to stranded products and packaging.  It may also force retailers, ALA member

21   lighting showrooms, distributors, and their manufacturer-suppliers to dump inventory at

22   non-market prices.  *Id.*  ALA lighting showroom members in California, for example, may

23   be compelled to market their unsalable inventory of light bulbs affected by the CEC's

24   November 13, 2019 regulation outside of their normal market areas in other states, and be

25   forced to develop or devote one-time marketing resources and incur marketing expenses

26   they would not normally develop just to dispose of those lamps.  The cost this uncertainty

27   creates cannot be measured.  And absent judicial intervention, costs will only grow.  The

28   resulting uncertainty will hamstring light bulb manufacturers, ALA member lighting

6

1    showrooms, distributors, and retailers in the lengthy supply-chain sequence.

2          13.    In the highly competitive consumer product landscape in a nationally

3    regulated environment, production of affordable, competitively priced light bulbs depends

4    largely on achieving production volumes and long production runs, and on maintaining an

5    efficient global distribution channel.

6          14.    Manufacturers rely on being able to ship the same type of light bulb to

7    California that they ship to every other state.  The logistics required to supply certain

8    products to only some states are costly and burdensome.  Indeed, manufacturers sought

9    federal efficiency regulation precisely because they were being "confronted with 'a

10   growing patchwork of differing State regulations which would increasingly complicate

11   their design, production and marketing plans.'"  *Air Conditioning & Refrigeration Inst. v.*

12   *Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 500 (9th Cir. 2005) (quoting S.

13   Rep. No. 100–6, at 4 (Jan. 30, 1987)).

14         15.    The United States District Court from the Eastern District of California in

15   *Air Conditioning* found that burdening manufacturers with multiple regulatory regimes

16   was, of itself, sufficient to demonstrate injury under EPCA.  *Air Conditioning &*

17   *Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, No. CV-S-02-2437

18   WBS/PAN, slip op. at 23 n.13 (E.D. Cal. June 11, 2003).  NEMA and ALA's members

19   face the same multiple-regulatory-regime injury if the CEC regulations challenged here

20   take effect.

21              **B.    Congress amended EPCA to create a single federal**

22                     **regulatory regime for energy efficient lighting.**

23         16.    Subchapter III of EPCA, 42 U.S.C. § 6291 *et seq*., establishes a federal

24   regulatory framework for a variety of consumer and industrial products that use

25   electricity.  It "was enacted in 1975 as part of a 'comprehensive national energy policy.'"

26   *Nat'l Res. Def. Council, Inc. v. Herrington*, 768 F.2d 1355, 1362, 1364 (D.C. Cir. 1985)

27   (quoting S. Rep. No. 516, 95th Cong., 1st Sess. 116 (1975)).  The Secretary of Energy (the

28   "Secretary"), through the DOE, implements EPCA by establishing test procedures and

setting energy-conservation standards for covered products.  *See* 42 U.S.C. §§ 6293, 6295(a).  The DOE also enforces compliance with energy conservation standards.  42 U.S.C. §§ 6303–04.  The U.S. Federal Trade Commission ("FTC") establishes product-labeling regulations for consumer products, including light bulbs, and enforces those regulations.  42 U.S.C. §§ 6294, 6303–04.

17.     Both the legislation by Congress and the DOE and FTC rulemakings under EPCA directed at light bulbs have been extensive and comprehensive.  They touch every one of the elements of the comprehensive regulatory scheme for covered products: definitions of federally regulated products, *id.* § 6291; test procedures, *id.* § 6293; labeling and information disclosure requirements, *id.* § 6294; energy conservation standards, *id.* § 6295; and certification and enforcement, *id.* §§ 6296, 6303–04 .  Congressional enactments affecting lighting products began in 1987 with the regulation of fluorescent lamp ballasts.  It expanded with amendments to EPCA in 1992, 2005, and 2007 to include different types of light bulbs and lighting fixtures.

18.      "Covered products" are those products listed in 42 U.S.C. § 6292(a); products that the Secretary classifies as such to serve the purposes of the statute, 42 U.S.C. § 6292(b); and products for which Congress otherwise directs the Secretary to set standards.   EPCA sets initial energy conservation standards for products listed in 42 U.S.C. § 6295(a)(1), and it authorizes the Secretary to set new or amended energy standards for covered products.  *Id.* § 6295(a)(2).

19.     To ensure that EPCA's energy policy would indeed be "comprehensive," and to respond to manufacturers' concerns about being exposed to disparate efficiency standards promulgated by states, Congress included broad express preemption provisions for state energy conservation standards in the 1987 amendments to EPCA.  EPCA preempts state energy conservation regulation of covered products both before federal energy conservation standards are effective, 42 U.S.C. § 6297(b), and after they become effective, *id.* § 6297(c).  Of particular relevance here is the express prohibition on state regulation of EPCA-covered products for which energy efficiency standards *have already*

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   *been established and are effective*.  With certain exceptions not relevant here,  the statute

2   states that "for any covered product, no State regulation concerning the energy efficiency,

3   energy use, or water use of such covered product shall be effective with respect to such

4   product."  42 U.S.C. § 6297(c).

5        20.     The Ninth Circuit has held that "[t]he legislative history [of EPCA]

6   demonstrates that Congress intended to preempt state energy efficiency standards."  *Air*

7   *Conditioning*, 410 F.3d at 500.  The Court of Appeals described EPCA's preemption of

8   State energy conservation standards as "broad," and explained that the breadth of

9   preemption was designed "to counteract the systems of separate state appliance standards

10   that had emerged" because of the DOE's policy of granting states' exemption requests. *Id.*

11        **II.**     **Federal Regulation of the Five Federally Covered Lamps**

12        21.     As described in more detail below, pursuant to its EPCA rulemaking

13   authority, the DOE has adopted or amended energy conservation standards for each of the

14   five federally covered lamps.  *See, e.g.*, 10 C.F.R. § 430.32(r), (x), & (bb).

15        **A.**     **Incandescent reflector lamps.**

16        22.     "Incandescent reflector lamps" were first regulated under EPCA by the

17   Energy Policy Act of 1992, Pub. L. 102-486, 106 Stat. 2776, 2817–19, 2821, 2824

18   (October 24, 1992) ("EPAct 1992").  In EPAct 1992, Congress defined "incandescent

19   reflector lamps," established test procedures and energy conservation standards governing

20   them and directed the FTC to adopt related energy-labeling requirements.

21        23.     In EPAct 1992, Congress also defined the term "incandescent lamp" and

22   distinguished an "incandescent reflector lamp" from a "general service incandescent

23   lamp."  *Compare* 42 U.S.C. § 6291(30)(C)(i) (lamp "not a reflector lamp") *with* 42 U.S.C.

24   § 6291(30)(C)(ii) (lamp "referred to as a reflector lamp").  Each falls within the broader

25   "incandescent lamp" umbrella, but an "incandescent reflector lamp" is not a "general

26   service incandescent lamp" in part because, by definition both federally and in California,

27   it is a "directional" lamp and the "general service incandescent lamp" is not.

28        (a)     Congress defined the "incandescent reflector lamp" as follows:

*Any lamp (commonly referred to as a reflector lamp) which is not colored or designed for rough or vibration service applications, that contains an inner reflective coating on the outer bulb **to direct the light**, an R, PAR, or similar bulb shapes (excluding ER or BR) with E26 medium screw bases, a rated voltage or voltage range that lies at least partially within 115 and 130 volts, a diameter which exceeds 2.75 inches, and is either—a low(er) wattage reflector lamp which has a rated wattage between 40 and 205 watts; or a high(er) wattage reflector lamp which has a rated wattage above 205 watts.*

*See* EPAct 1992, Pub. L. 102-486, 106 Stat. 2818–19 (1992) (codified at 42 U.S.C. § 6291(30)(C)(ii)(1992)) (emphasis added); *see also* 42 U.S.C. § 6291(30)(F)("The term 'incandescent reflector lamp' means a lamp described in subparagraph (C)(ii).").

(b)     Congress amended this definition in the Energy Independence and Security Act of 2007, Pub. L. 110-140, 121 Stat. 1492, 1587 (Dec. 19, 2007) ("hereinafter "EISA-2007").  The amendment eliminated the parenthetical exclusion of "ER" and "BR" shape reflector bulbs, and added ER, BR and BPAR shape reflector bulbs to the definition.  It also reduced the minimum diameter of "incandescent reflector lamps" from 2.75 inches to 2.25 inches.  42 U.S.C. § 6291(30)(C)(ii).  Examples of the different "incandescent reflector lamp" bulb shapes appear in Exhibit B to this Complaint.

(c)     In EPAct 1992, Congress defined a "general service incandescent lamp" as "any incandescent lamp (*other* than a miniature or photographic lamp) that has an E26 medium screw base, a rated voltage range at least partially within 115 and 130 volts, and which can be used to satisfy the majority of lighting applications, but does not include any lamps specifically designed for" 17 different, enumerated applications.  EPAct 1992, Pub. L. 102-486, 106 Stat. 2818– 19 (codified at 42 U.S.C. § 6291).

10

(d)     In EISA-2007, Congress amended the definition such that "general service incandescent lamp" now "means a standard incandescent or halogen type lamp that-- (I) is intended for general service applications; (II) has a medium screw base; (III) has a lumen range of not less than 310 lumens and not more than 2,600 lumens . . . . ; and (IV) is capable of being operated at a voltage range at least partially within 110 and 130 volts." 42 U.S.C. § 6291(30)(D)(i).  The amended definition also excluded 22 lighting applications and bulb shapes.  42 U.S.C.  § 6291(30)(D)(ii)(I)–(XXII).

(e)     The 2007 amendment expressly called out specific lamps with different bulb shapes that were "not included" in the term "general service incandescent lamp" including, but not limited to *reflector lamps*, G shape lamps, T shape lamps, and B, BA, CA, F, G16-1/2, G-25, G30, S, or M-14 lamps of 40 watts or less.  *See* EISA-2007, 42 U.S.C. § 6291(30)(D)(ii)(XI), (XX), (XXI), (XXII).  Examples of the B, BA, CA, F, G16-1/2, G-25, G30, G-shape with diameter of 5 inches or more, and T-shape lamps are displayed in Exhibits C and E to this Complaint.

(f)     EISA-2007's specific exclusion of the "reflector lamp" from the definition of "general service incandescent lamp," 42 U.S.C. § 6291(30)(D)(ii)(XI), continues the distinction Congress made in EPAct 1992 between "incandescent reflector lamps" and "general service incandescent lamps." For instance, the definition of "incandescent reflector lamp" specifies that such lamps "contain[] an inner reflective coating on the outer bulb *to direct the light*," whereas "general service incandescent lamps" do not.  That is why reflector lamps are commonly referred to as "directional lamps," and are used in track lighting and recessed fixtures, to train light on a task area, or in outdoor fixtures designed to illuminate a specific area for security or aesthetic accenting.  *See e.g.*, Exhibit A at 5 (The CEC's definition states, "Reflector lamp" means a lamp that has an R, PAR, BPAR, BR, ER, MR, or similar bulb shape as defined in ANSI C78.20-2003

11

and ANSI C79.1-2002 and is used to provide *directional light*.)  In contrast, "general service incandescent lamps," which feature omnidirectional light output, are traditionally used in ceiling pendent fixtures, ceiling fixtures, table and bedside lamp fixtures, floor lamp fixtures, entry and garage fixtures.

(g)     Federal regulations under EPCA continue to treat these categories differently.  In EPAct 1992, Congress enacted energy conservation standards for "incandescent reflector lamps" but did not enact energy conservation standards for "general service incandescent lamps."  Instead, it directed the DOE to initiate a rulemaking procedure to determine whether energy conservation standards should be applied to "general service incandescent lamps."  Pub. L. 102-486, 106 Stat. at 2825.  In EISA-2007, Congress ultimately adopted—and DOE later implemented—energy conservation standards for "general service incandescent lamps" that differ from the standards for "incandescent reflector lamps."  Pub. L. 110-140, 121 Stat. at 1577, 1588–89.  *Compare* 10 C.F.R. § 430.32(r) (current DOE "incandescent reflector lamp" standards) *with* 10 C.F.R. § 430.32(x)(i) (current DOE "general service incandescent lamp" standards).

(h)     The Secretary has not adopted a 45-lumens-per-watt energy conservation standard applicable to "incandescent reflector lamps."

(i)     In short, the "standard incandescent or halogen type lamp" that Congress identified in the definition of "general service incandescent lamp" is the common, pear-shaped light bulb.  An example from the DOE's website appears in Exhibit D.  That definition expressly does "not include" the special bulb shapes and applications identified in Exhibit B and Exhibit C.

**B.     Candelabra base incandescent lamps.**

24.     In EISA-2007, Pub. L. 110-140, 121 Stat. 1574-75, Congress defined "candelabra base incandescent lamp" as "a lamp that uses candelabra screw base as described in ANSI C81.61-2006, Specifications for Electric Bases, common designations E11 and E12."  42 U.S.C. § 6291(30)(U).  A candelabra screw base is smaller than the

12

larger E26 medium screw base of the "general service incandescent lamp" and the "incandescent reflector lamp."  By definition, then, a "candelabra base incandescent lamp" is not a "general service incandescent lamp" because it lacks a medium screw base. *See* 42 U.S.C. § 6291(30)(D)(i)(II).  The candelabra screw-base lamp is traditionally used in decorative lighting fixtures.  Exhibit E shows examples of this lamp.  The smaller candelabra screw base of the candelabra-base lamp traditionally support light bulbs with a smaller form factor such as decorative "B", "BA", "C", "F" and smaller diameter "G" shape lamps used in decorative light fixtures and vanity mirrors found in theater dressing rooms and bathrooms.  These special bulb shapes with smaller form factors are explicitly "not include[d]" in the definition of "general service incandescent lamp."  42 U.S.C. § 6291(30)(D)(ii)(XX)–(XXII).

25.     Unlike "candelabra base incandescent lamps," "general service incandescent lamps" are not traditionally used in decorative lighting fixtures.  They are too large, do not screw into the candelabra base sockets, and do not have the requisite aesthetic appearance.

26.     In EISA-2007, Congress established an energy conservation standard for "candelabra base incandescent lamps," treating them differently than and separately from "general service incandescent lamps."  Specifically, Congress limited the energy use of "candelabra base incandescent lamps" to "60 rated watts."  Pub. L. 110-140, 121 Stat. at 1578; *compare also* 10 C.F.R. § 430.32(x)(i) (current "general service incandescent lamp" standard) *with* 10 C.F.R. § 430.32(x)(ii) (current "candelabra base incandescent lamp" standard).  Because of this wattage limitation, "candelabra base incandescent lamps" cannot reach the light output of "general service incandescent lamps" (310–2600 lumens). *See* 42 U.S.C. § 6291(30)(D)(i)(III).  Instead, they typically do not exceed 650 lumens.

27.     The Secretary of Energy has not adopted a 45-lumens-per-watt energy conservation standard applicable to "candelabra base incandescent lamps."

**C.     Intermediate base incandescent lamps.**

28.     In EISA-2007, Pub. L. 110-140, 121 Stat. at 1575, Congress defined

13

"intermediate base incandescent lamp" as "a lamp that uses an intermediate screw base as described in ANSI C81.61-2006, Specifications for Electric Bases, common designation E17." 42 U.S.C. § 6291(30)(V).  An intermediate screw base is smaller than the larger E26 medium screw base of the "general service incandescent lamp" and the "incandescent reflector lamp," but larger than the E12 candelabra screw base of the "candelabra base incandescent lamp."  By definition, an "intermediate base incandescent lamp" is not a "general service incandescent lamp" because it does not have a medium screw base.  *See* 42 U.S.C. § 6291(30)(D)(i)(II) (defining "general service incandescent lamp" to include such a screw base).  The intermediate screw base lamp is traditionally used in special lighting applications with space constraints such as appliances, ceiling fans, and furniture display or showcase lamps.  Exhibit F shows examples of the intermediate screw base lamp.  The smaller intermediate base of the intermediate screw base lamp traditionally supports light bulbs used in special applications such as appliance lamps, sign lamps using "S" shape bulbs, showcase lamps, and tubular (T-shape) lamps used in exit signs.  These special applications—appliance lamps, sign lamps, and showcase lamps—are explicitly "not include[d]" in the definition of "general service incandescent lamp."  42 U.S.C. § 6291(30)(D)(ii)(I), (XIV), (XVI).

29.    "General service incandescent lamps" are not traditionally used in the same applications as "intermediate base incandescent lamps" because they are too large to fit in space-constrained areas.

30.    In EISA-2007, Congress established an energy conservation standard for "intermediate base incandescent lamps," treating them separately from and differently than "general service incandescent lamps."  Specifically, Congress limited the energy use of these lamps to "40 rated watts."  Pub. L. 110-140, 121 Stat. at 1578.  *Compare* 10 C.F.R. § 430.32(x)(i) ("general service incandescent lamp" standard) *with* 10 C.F.R. § 430.32(x)(ii) ("intermediate base incandescent lamp" standard).  As a result of the wattage limitation for "intermediate base incandescent lamps," these lamps cannot realize the full light output range of "general service incandescent lamps" (310–2600 lumens).  *See* 42

1  U.S.C. § 6291(30)(D)(i)(III).  Instead, they typically do not exceed 430 lumens.

2     31.    The Secretary has not adopted a 45-lumens-per-watt energy conservation

3  standard applicable to "intermediate base incandescent lamps."

4                **D.    Rough service incandescent lamps.**

5     32.    In EISA-2007, Pub. L. 110-140, 121 Stat. 1575, Congress defined "rough

6  service incandescent lamp" as a lamp that "has a minimum of 5 supports with filament

7  configurations that are C-7A, C-11, C-17, and C-22 as listed in Figure 6-12 of the 9th

8  edition of the IESNA Lighting handbook, or similar configurations where lead wires are

9  not counted as supports" and that "is designed and marketed specifically for 'rough

10  service' applications, with — (I) the designation appearing on the lamp packaging; and

11  (II) marketing materials that identify the lamp as being for rough service."  42 U.S.C.

12  § 6291(30)(X).  A "rough service incandescent lamp" is not limited to a certain type of

13  screw base, but rather has a unique filament configuration that is designed to protect the

14  filament during "rough service" applications.  This filament is different than the one used

15  in "general service incandescent lamps."  Rough service lamps are designed to withstand

16  bumps, shocks, vibrations and other external stresses that could damage the filament of a

17  regular lamp and cause failure.  Some examples of such harsh usage include garage door

18  openers, lamps near machinery, or lamps near doors that slam regularly.

19     33.    In EISA-2007, Pub. L. 110-140, 121 Stat. at 1574, Congress expressly

20  legislated that the rough service lamp is "not include[d]" in the definition of "general

21  service incandescent lamp."  42 U.S.C. § 6291(30)(D)(ii)(XII).

22     34.    Congress did not enact energy conservation standards for "rough service

23  incandescent lamps" in EISA-2007.  But it did amend EPCA to establish a distinct

24  regulatory scheme for "rough service incandescent lamps" whereby DOE would establish

25  such standards if certain conditions precedent were met.

26     *(A) In general*

27     *The Secretary shall prescribe an energy efficiency standard for rough service*

28  *lamps, vibration service lamps, 3-way in-candescent lamps, 2,601-3,300 lumen*

general service incandescent lamps, and shatter-resistant lamps **only in accordance with this paragraph.** ***

*(B) Benchmarks*

*Not later than 1 year after December 19, 2007, the Secretary, in consultation with the National Electrical Manufacturers Association, shall-*

*(i) collect actual data for United States unit sales for each of calendar years 1990 through 2006 for each of the 5 types of lamps described in subparagraph (A) to determine the historical growth rate of the type of lamp; and*

*(ii) construct a model for each type of lamp based on coincident economic indicators that closely match the historical annual growth rate of the type of lamp to provide a neutral comparison benchmark to model future unit sales after calendar year 2006.*

*(C) Actual sales data*

*(i) In general*

*Effective for each of calendar years 2010 through 2025, the Secretary, in consultation with the National Electrical Manufacturers Association, shall-*

*(I) collect actual United States unit sales data for each of 5 types of lamps described in subparagraph (A); and*

*(II) not later than 90 days after the end of each calendar year, compare the lamp sales in that year with the sales predicted by the comparison benchmark for each of the 5 types of lamps described in subparagraph (A).*

*(D) Rough service lamps*

*(i) In general*

*Effective beginning with the first year that the reported annual sales rate for rough service lamps demonstrates actual unit sales of rough service lamps that achieve levels that are at least 100 percent higher than modeled unit sales for that same year, the Secretary shall*

*(I) not later than 90 days after the end of the previous calendar year, issue a finding that the index has been exceeded; and*

*(II) not later than the date that is 1 year after the end of the previous calendar year, complete an accelerated rulemaking to establish an energy conservation standard for rough service lamps.*

*(ii) Backstop requirement*

16

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> *If the Secretary fails to complete an accelerated rulemaking in accordance with clause (i)(II), effective beginning 1 year after the date of the issuance of the finding under clause (i)(I), the Secretary shall require rough service lamps to--*

> *(I) have a shatter-proof coating or equivalent technology that is compliant with NSF/ANSI 51 and is designed to contain the glass if the glass envelope of the lamp is broken and to provide effective containment over the life of the lamp;*

> *(II) have a maximum 40-watt limitation; and*

> *(III) be sold at retail only in a package containing 1 lamp.*

EISA-2007, Pub. L. 110-140, 121 Stat. at 1581–82, 42 U.S.C. § 6295(*l*)((4)(A)–(D) (emphasis supplied). The legislative direction that the Secretary only prescribe standards "in accordance with this paragraph" precluded the Secretary from regulating rough-service lamps in any other manner, including, for example, treating such lamps as "general service incandescent lamps."

35. In October 2016, DOE published a notice in the Federal Register announcing that the actual unit sales for rough service lamps exceeded the congressional threshold that required regulation pursuant to 42 U.S.C. § 6295(*l*)(4)(D). 81 Fed. Reg. 71,794, 71,800 (Oct. 18, 2016). DOE failed to complete the accelerated rulemaking within the one year that EPCA requires. 42 U.S.C. § 6295(*l*)(4)(D)(i)(II). As a result, DOE published a Final Rule adopting statutory backstop requirements that (i) limited the energy use of rough service lamps to 40 watts, (ii) required a special coating on the bulb, and (iii) limited marketing and packaging of the rough service lamp to one per package. *Energy Conservation Program: Energy Conservation Standards for Rough Service Lamps and Vibration Service Lamps*, 82 Fed. Reg. 60,845, 60,845–46 (Dec. 26, 2017); *see also* 42 U.S.C. § 6295(*l*)(4)(D)(ii) (setting forth backdrop requirements); 10 C.F.R. § 430.32(bb)(1) (setting forth energy conservation standards for "rough service incandescent lamps").

36. The Secretary has not adopted a 45-lumens-per-watt energy conservation

1    standard applicable to "rough service incandescent lamps."

2                    **E.    Vibration service incandescent lamps.**

3          37.    In EISA-2007, Pub. L. 110-140, 121 Stat. at 1576, Congress defined

4    "vibration service lamp" as a lamp that "has filament configurations that are C-5, C-7A, or

5    C-9, as listed in Figure 6-12 of  the 9th Edition of the IESNA Lighting Handbook or

6    similar configurations," that "has a maximum wattage of 60 watts," that "is sold at retail

7    in packages of 2 lamps or less," that "is designated and marketed specifically for vibration

8    service or vibration-resistant applications," which designation "appear[s] on the lamp

9    packaging"; and with "marketing materials that identify the lamp as being vibration

10   service only."  42 U.S.C. § 6291(30)(AA).  A "vibration service incandescent lamp" is not

11   limited by type of screw base; rather, such lamps have a unique filament configuration

12   (slightly different than the rough-service-lamp filament), which is designed to protect the

13   filament in "vibration service" applications.  Vibration service lamps are designed for

14   applications in which vibrations would otherwise damage the filament of a regular lamp.

15   Some examples include garage door openers and lamps near machinery.

16         38.    In EISA-2007, Pub. L. 110-140, 121 Stat. at 1574, Congress expressly

17   legislated that the vibration service lamp is "not include[d]" in the definition of "general

18   service incandescent lamp."  42 U.S.C. § 6291(30)(D)(ii)(XIX).

19         39.    In EISA-2007, Congress did not enact energy conservation standards for

20   "vibration service incandescent lamps."  But it did amend EPCA to establish a separate

21   regulatory scheme for such lamps—similar to its approach for "rough service

22   incandescent lamps."  42 U.S.C. § 6295(*l*).  Pursuant to that scheme, DOE would establish

23   energy conservation standards if certain conditions precedent were met:

24         *(i) In general*

25         *Effective beginning with the first year that the reported annual sales rate for*

26         *vibration service lamps demonstrates actual unit sales of vibration service lamps*

27         *that achieve levels that are at least 100 percent higher than modeled unit sales for*

28         *that same year, the Secretary shall--*

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*(I) not later than 90 days after the end of the previous calendar year, issue a finding that the index has been exceeded; and*

*(II) not later than the date that is 1 year after the end of the previous calendar year, complete an accelerated rulemaking to establish an energy conservation standard for vibration service lamps.*

*(ii) Backstop requirement*

*If the Secretary fails to complete an accelerated rulemaking in accordance with clause (i)(II), effective beginning 1 year after the date of the issuance of the finding under clause (i)(I), the Secretary shall require vibration service lamps to--*

*(I) have a maximum 40-watt limitation; and*

*(II) be sold at retail only in a package containing 1 lamp.*

42 U.S.C. § 6295(*l*)(4)(E). The legislative direction that DOE prescribe energy efficiency standards for vibration service lamps "only in accordance with this paragraph," 42 U.S.C. § 6295(*l*)(4)(A), precluded the Secretary from regulating such lamps in any other manner, including, for example, regulating them as "general service incandescent lamps."

40.     In October 2016, DOE published a notice in the Federal Register announcing that the actual unit sales for vibration service lamps exceeded the congressional threshold that required regulation pursuant to 42 U.S.C. § 6295(*l*)(4)(E). 81 Fed. Reg. 71,794, 71,800 (Oct. 18, 2016). But DOE failed to complete the accelerated rulemaking within one year, as contemplated by 42 U.S.C. § 6295(*l*)(4)(E)(i)(II). DOE accordingly published a Final Rule to adopt the statutory backstop requirements, which limited the energy use of vibration service lamps to 40 watts, and limited marketing and packaging of the lamps to one per package. 82 Fed. Reg. at 60,845–46 (Dec. 26, 2017); *see also* 10 C.F.R. §430.32(bb)(2) (setting forth energy conservation standards for "vibration service incandescent lamps").

41.     The Secretary has not adopted a 45-lumens-per-watt energy conservation standard applicable to "vibration service incandescent lamps."

### III.   Congress Did Not Include the Five Federally Covered Lamps in its "General Service Lamp" Regulation

42.     In EISA-2007, 110 Pub. L. 140, 121 Stat. at 1576, Congress defined the "general service lamp" to include (i) "general service incandescent lamps"; (ii) "compact fluorescent lamps"; (iii) "general service light-emitting diode (LED or OLED) lamps" and (iv) "any other lamps that the Secretary determines are used to satisfy lighting applications traditionally served by general service incandescent lamps." 42 U.S.C. § 6291(30)(BB). But "[t]he term 'general service lamp' does not include":  (i) "any lighting application or bulb shape described in any of the subclauses through (XXII) or subparagraph (D)(ii)" or "any general service fluorescent lamp or incandescent reflector lamp."  *Id.*

43.     The Secretary has adopted by rulemaking a definition of "general service lamp" that mirrors the statutory definition.  A "[g]eneral service lamp includes general service incandescent lamps, compact fluorescent lamps, general service light-emitting diode lamps, organic light-emitting diode lamps, and any other lamps that the Secretary determines are used to satisfy lighting applications traditionally served by general service incandescent lamps."  10 C.F.R. § 430.2.  But "this definition does not apply to any lighting application or bulb shape excluded from the 'general service incandescent lamp' definition, or any general service fluorescent lamp or incandescent reflector lamp."  *Id.*

44.     Both Congress' statutory definition and the Secretary's definition expressly state that the "lighting applications or bulbs shapes excluded from the 'general service incandescent lamp' definition" are not included in the definition of "general service lamp."  In the case of the incandescent reflector lamp, Congress stated twice in the same statutory paragraph, cited in paragraph 42 above, that the incandescent reflector lamp is not included in the definition of "general service lamp."  The "reflector lamp" is excluded in subclause (I) of 42 U.S.C. § 6291(30)(BB)(i) (defining "general service lamp" to include "general service incandescent lamps") because "general service incandescent lamp" is defined to *exclude* reflector lamps.  42 U.S.C. § 6291(30)(D)(ii)(XI).  And the "incandescent reflector lamp" is expressly excluded in subclause (II) of 42 U.S.C. §

1    6291(30)(BB)(ii).  As explained above, the five federally covered lamps and other lamps

2    are excluded from the definition of "general service incandescent lamp," and not included

3    in the federal definition of "general service lamp."

4         45.    After notice-and-comment rulemaking, the Secretary concluded that the

5    expanded definition of "general service lamp" that the CEC separately adopted on

6    November 13, 2019 is not consistent with EPCA.  The Secretary ruled that the DOE's

7    definitions of "general service incandescent lamp" and "general service lamp" would

8    remain aligned with Congress' statutory definitions in EPCA.  GSL Final Rule, 84 Fed.

9    Reg. 46,661 (Sept. 5, 2019).

10        46.    The CEC's November 13, 2019 adoption of a rule amending and

11   expanding Title 20's definitions of "general service incandescent lamp" and "general

12   service lamp" conflicts with the federal definitions of those terms.  As a justification for

13   its rule, a CEC Staff Report presented to the Commission alleged that its definition will

14   eliminate confusion between California's definition of "general service lamp" and the

15   federal definition of that term.  CEC Staff, Initial Statement of Reasons at 4, Docket No.

16   19-AAER-04 (Aug. 16, 2019).  That justification is unfounded, as the GSL Final Rule

17   spells out.  Ironically, the Secretary expressed concern in the GSL Final Rule with an

18   interpretation of EPCA that would "potentially subject these lamp[] types to two separate

19   standards and create confusion among regulated entities as to which one applies."  84 Fed.

20   Reg. at 46,666.  California's expansion of these definitions does just that, and the

21   amendment will sow regulatory and compliance confusion.

**FIRST CAUSE OF ACTION — EXPRESS PREEMPTION**

23        47.    Plaintiffs incorporate by reference and re-alleges each and every allegation

24   set forth above in paragraphs 1 through 46 as if fully set forth herein.

25        48.    The U.S. Constitution makes federal law and regulations "the supreme Law

26   of the Land."  U.S. Const. art. VI, cl. 2.  EPCA declares that, subject to limited express

27   statutory exceptions, "effective on the effective date of an energy conservation standard

28   established in or prescribed under section 6295 of this title for any covered product, no

21

State regulation, or revision thereof, concerning the energy efficiency, energy use, or water use of the covered product shall be effective with respect to such covered product." 42 U.S.C. § 6297(c).

49.     The five federally covered lamps are covered products under EPCA with applicable energy conservation standards established or prescribed under 42 U.S.C. § 6295.

50.     No exception to preemption under 42 U.S.C. 6297(c) is applicable with respect to the five federally covered lamps.

51.     The CEC's regulations conflict with the statutory scheme of EPCA, which sets forth a single federal regulatory system for all covered lighting products, to the exclusion of state efforts to do the same.  California's November 13, 2019 amendment to Title 20 would apply an energy conservation standard of 45-lumens-per-watt to the five federally-covered lamps, which differs from the federal energy conservation standards, and would effectively ban the sale of the five federally covered lamps to and in California.

52.     The CEC's November 13, 2019 amendment is a state regulation concerning energy efficiency for EPCA-covered products.  NEMA, ALA, and each of their members who make and/or sell the five federally covered lamps to and in California are injured by the CEC's regulations.  These violations of the U.S. Constitution and EPCA threaten NEMA and ALA members with irreparable injury for which there is no adequate remedy at law.  As such, they are aggrieved parties are within the meaning of 42 U.S.C. § 6306(c).

## SECOND CAUSE OF ACTION — CONFLICT PREEMPTION

53.     Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 52 as if fully set forth herein.

54.     EISA-2007 authorized the Secretary to initiate a rulemaking for general service lamps not later than January 1, 2014 and as part of that rulemaking called on the Secretary to "include consideration of a minimum standard of 45 lumens per watt for general service lamps."  42 U.S.C. § 6295(i)(6)(A)(ii)(II).  While this directive to the Secretary does not mandate adoption of a 45-lumens-per-watt standard, the Secretary has

1    recently indicated that DOE will decide upon this standard as part of a pending

2    rulemaking procedure.  GSL Final Rule, 84 Fed. Reg. at 46,662 ("DOE will make that

3    determination in a separate rulemaking.").

4         55.    Congress granted DOE the authority to decide whether to prescribe a

5    minimum standard of 45-lumens-per-watt for "general service lamps."  Accordingly, the

6    scope of the energy conservation standard for general service lamps—whether a 45-

7    lumens-per-watt standard or otherwise—relates to the federal definition of "general

8    service lamps."

9         56.    In EISA-2007, Congress granted California a limited exception to

10   preemption to adopt the Secretary's final rule in accordance with EPCA—or if a final rule

11   had not been adopted, a 45-lumens-per-watt backstop standard specifically applicable to

12   "general service lamps."  42 U.S.C. § 6295(i)(6)(A)(vi).  California's exception to

13   preemption, assuming that it is available, is tied to Congress' definition of "general

14   service lamp," not the conflicting, expanded definition that California adopted on

15   November 13, 2019.  In proposing the expansion of the definition of "general service

16   lamp," the CEC stated that it was relying on California's exception to preemption under

17   42 U.S.C. § 6295(i)(6)(A)(vi).

18        57.    The DOE disputes that California's exception to preemption is available

19   because, in the Secretary's view, the exception depends on the outcome of a pending

20   rulemaking that is nearing completion.  GSL Final Rule, 84 Fed. Reg. at 46,669

21   ("Therefore, all states, including California and Nevada, are prohibited from adopting

22   energy conservation standards for GSLs.").

23        58.    Even if an exception to preemption is available to California, the expanded

24   definition of "general service lamp" creates an actual conflict with federal law because:

25        (a)    If the DOE adopts a minimum 45-lumens-per-watt standard for

26        "general service lamps," it will apply to "general service lamps" within the DOE's

27        definition, but not within California's expanded definition.  And California would

28        only be able to apply that standard to the federally defined "general service lamp"

23

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    under 42 U.S.C. § 6295(i)(6)(A)(vi)(I).

2            (b)      If the DOE does not adopt a minimum 45-lumens-per-watt standard

3    for "general service lamps," then California could not adopt that standard pursuant

4    to 42 U.S.C. § 6295(i)(6)(A)(vi)(I).

5            (c)      Assuming that California is able to adopt a 45-lumens-per-watt

6    backstop standard pursuant to 42 U.S.C. § 6295(i)(6)(A)(vi)(II), the backstop

7    standard only applies to general service lamps as defined by federal law, not

8    California's conflicting definition because that "backstop" arises exclusively under

9    federal law and applies only to a federally defined "general service lamp that does

10   not meet a minimum efficacy standard of 45 lumens per watt."  42 U.S.C. §

11   6295(i)(6)(A)(v).

12   59.      California has no authority to expand the limited exception to preemption

13   that Congress provided.  The CEC's new regulation and its conflicting, expanded

14   definition of "general service lamp" has created and will continue to create confusion in

15   the marketplace over the applicable law and compliance.  The conflicting definition and

16   resulting confusion warrant the application of conflict preemption and a declaratory

17   judgment finding the CEC's amendment to Title 20 definition unconstitutional.

18   60.      In adopting the expanded definition of general service lamp and purporting

19   to regulate a number of specialty lamps as "general service lamps," the CEC also violated

20   California's Warren-Alquist Act, which provides in pertinent part:

21           The commission may, after one or more public workshops, with public notice and

22           an opportunity for all interested parties to comment, provide for inclusion of a

23           particular type of specialty light in its energy efficiency standards applicable to

24           general purpose lighting, if it finds that there has been a significant increase in

25           sales of that particular type of particular specialty light due to the use of that

26           specialty light in general purpose lighting applications.

27   Cal. Pub. Res. Code, § 25402.5.4(f)(2).  The CEC did not and could not make the finding

28   required by the Warren-Alquist Act.  Sales of the particular specialty lights have not

experienced "a significant increase in sales"; rather, those sales have been declining—a fact of which CEC is well aware.  For example:

(a)     Sales of "three-way incandescent lamps" have been declining for a number of years.  In 2011, domestic U.S. shipments of three-way incandescent lamps were approximately 31,619,000 units.  77 Fed. Reg. 16,183, 16,186 (Mar. 20, 2012).  By 2018, domestic U.S. shipments of three-way incandescent lamps had declined over 30% since 2011 to approximately 22,098,000 units.  84 Fed. Reg. 17,362, 17,365 (Apr. 25, 2019).

(b)     Sales of "shatter-resistant incandescent lamps" have been declining for a number of years.  In 2011, domestic U.S. shipments of shatter-resistant incandescent lamps" were approximately 1,659,000 units.  77 Fed. Reg. 16,183, 16,186 (Mar. 20, 2012).  By 2018, domestic U.S. Shipments of shatter-resistant lamps had declined over 75% to approximately 400,000 units in 2018.  84 Fed. Reg. 17,362, 17,365 (Apr. 25, 2019).

(c)     Sales of incandescent lamps with a lumen output level from 2601–3300 lumens have been declining for a number of years.  In 2011, domestic sales of 2601–3300 lumen incandescent lamps were approximately 33,913,000 units.  77 Fed. Reg. 16,183, 16,186 (Mar. 20, 2012).  By 2018, domestic shipments of 2601–3300 lumen incandescent lamps had declined over 92% to approximately 2,465,000 units.  84 Fed. Reg. 17,362, 17,365 (Apr. 25, 2019).

(d)     In written comments to the CEC dated September 17, 2018, NEMA pointed out the decline in these shipments described in paragraphs (a)–(c) above over time as well as data showing the decline in sales of the five federally covered lamps.  In more recent written comments to the CEC dated October 19, 2019, NEMA repeated the data showing that sales of these specialty lamps were declining, not increasing.

(e)     The Department of Energy noted in its Final Rule declining to use an expanded definition of general service lamp "that shipments of candelabra base

1    incandescent lamps have been in a continuous decline since 2011 and there is no

2    evidence of increasing shipments."  84 Fed. Reg. 46,661, 46,669 (Sept. 5, 2019).

3        61.    The harm to light-bulb manufacturers, distributors, retailers and consumers

4    described above would be significant.  Plaintiffs, as representatives for the aggrieved

5    manufacturers and lighting showrooms, therefore are permitted under 42 U.S.C. § 6306(c)

6    to bring this claim. Section 6306(c)(1) permits this suit "to determine whether a State or

7    local government is complying with the requirements of" EPCA.

8                    **PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF**

9        WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its

10   favor, and grant the following relief:

11       A.    A temporary restraining order and preliminary injunction to maintain the

12   status quo pending the adjudication of this Complaint on the merits and to prevent the

13   irreparable harm described in this complaint;

14       B.    A declaratory judgment and permanent injunction against the CEC finding

15   that the CEC's November 13, 2019 adoption of a rule amending Title 20 of the California

16   Code of Regulations, as attached at Exhibit A to this Complaint:

17               (1)    violates the express preemption provision of 42 U.S.C. § 6297(c)

18                      because it is a state regulation concerning energy use or energy efficiency

19                      of covered products;

20               (2)    violates the Supremacy Clause of the U.S. Constitution under the

21                      principles of conflict preemption with EPCA's scheme for regulation of

22                      the five federally covered lamps; and

23               (3)    is not subject to any exception to preemption with respect to the

24                      five federally covered lamps;

25       C.    A declaratory judgment and permanent injunction against the CEC from

26   enforcing the above energy efficiency standards;

27       D.    Such other relief as the court deems just and reasonable, including

28   preliminary and temporary relief, and fees and costs as may be requested or required.

1

2    Dated: December 13, 2019              HOGAN LOVELLS US LLP

3                                          By _/s/ Michelle Roberts Gonzales____
                                              Michelle Roberts Gonzales
4                                             Sean Marotta
                                              (*pro hac vice* application pending)
5                                             Nathaniel Nesbitt
                                              (*pro hac vice* application pending)
6
                                              *Attorneys for Plaintiffs National Electrical*
7                                             *Manufacturers Association and American*
                                              *Lighting Association*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C § 1746, I, CLARK REID SILCOX, hereby declare:

1.     I am the Secretary and General Counsel of the National Electrical Manufacturers Association, and the National Electrical Manufacturers Association is a Plaintiff in the above-captioned civil action.

2.     I have read this Verified Complaint and know its contents, and the same are true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of December 2019.

/s/ Clark Reid Silcox_____
CLARK REID SILCOX
(original signature retained by
attorney Michelle Roberts Gonzales)

28

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

**California Energy Commission Regulation**

**Amending Title 20 Adopted November 13, 2019**

| DOCKETED | |
|---|---|
| **Docket Number:** | 19-AAER-04 |
| **Project Title:** | General Service Lamps |
| **TN #:** | 229452 |
| **Document Title:** | Proposed Regulatory Language - General Service Lamps Appliance Efficiency Rulemaking |
| **Description:** | N/A |
| **Filer:** | Patrick Saxton |
| **Organization:** | California Energy Commission |
| **Submitter Role:** | Commission Staff |
| **Submission Date:** | 8/15/2019 4:47:32 PM |
| **Docketed Date:** | 8/15/2019 |

# Proposed Regulatory Language

**California Code of Regulations**
**Title 20. Public Utilities and Energy**
**Division 2. State Energy Resources Conservation and Development Commission**
**Chapter 1. General Provisions**
**Article 1. Construction of Regulations**
**Section 1004**
**and**
**Chapter 4. Energy Conservation**
**Article 4. Appliance Efficiency Regulations**
**Sections 1601 – 1609**
**as related to General Service Lamps**
**August 16, 2019**

Proposed new language appears as underline (example) and proposed deletions appear as strikeout (example). Existing language appears as plain text. Three dots or "…" represents the substance of the regulations that exists between the proposed language and current language.

## § 1004. ~~Partial Invalidity~~Severability.

Each part of this division shall be deemed severable, and in the event that any provision of this division is held to be invalid, the remainder of this division shall continue in full force and effect.

Note: Authority cited: Sections 25213 and 25218(e) Public Resources Code.
Reference: Section 25213 Public Resources Code.

## § 1601. Scope. [No changes]

## § 1602. Definitions.

### (a) General.

In this Article the following definitions apply. If a term is not defined here, the applicable definition in NAECA, EPAct, the EPAct 2005, EISA, or the test methods listed in section 1604 of this Article shall apply where it is reasonable to do so.

## …[skipping "AC" through "Consumer product"]

"Correlated color temperature (CCT)" means the color appearance, or actual color of the lamp in accordance with IES LM-16-1993.

## …[skipping "CSA" through "Gas"]

"General lighting application" means lighting that provides an interior or exterior area with overall illumination.

…**[skipping through the end of (a)]**

…**[skipping (b)-(j)]**

**(k) Lamps.**
   **(1) General Service Lamps Sold Before January 1, 2020, and All Other Lamps.**

…**[skipping "Appliance Lamp" through "Voltage Range"]**

   **(2) General Service Lamps Sold On or After January 1, 2020.**

"Black light lamp" means a lamp that is designed and marketed as a black light lamp and is an ultraviolet lamp with the highest radiant power peaks in the UV-A band (315 to 400 nm) of the electromagnetic spectrum.

"Bug lamp" means a lamp that is designed and marketed as a bug lamp, has radiant power peaks above 550 nm on the electromagnetic spectrum, and has a visible yellow coating.

"Colored lamp" means a colored fluorescent lamp, a colored incandescent lamp, or a lamp designed and marketed as a colored lamp with either of the following characteristics (if multiple modes of operation are possible [such as variable CCT], either of the below characteristics must be maintained throughout all modes of operation):  (1) A CRI less than 40, as determined according to the method set forth in CIE Publication 13.3; or (2) A CCT less than 2,500K or greater than 7,000K.

"Designed and marketed" means exclusively designed to fulfill the indicated application and, when distributed in commerce, designated and marketed solely for that application, with the designation prominently displayed on the packaging and all publicly available documents (e.g., product literature, catalogs, and packaging labels).

"General service incandescent lamp" means a standard incandescent or halogen type lamp that is intended for general service applications; has a medium screw base; has a lumen range of not less than 310 lumens and not more than 2,600 lumens or, in the case of a modified spectrum lamp, not less than 232 lumens and not more than 1,950 lumens; and is capable of being operated at a voltage range at least partially within 110 and 130 volts; however this definition does not apply to the following incandescent lamps—

(1) An appliance lamp;

(2) A black light lamp;

(3) A bug lamp;

(4) A colored lamp;

(5) A G shape lamp with a diameter of 5 inches or more as defined in ANSI C79.1-2002;

2

(6) An infrared lamp;

(7) A left-hand thread lamp;

(8) A marine lamp;

(9) A marine signal service lamp;

(10) A mine service lamp;

(11) A plant light lamp;

(12) An R20 short lamp;

(13) A sign service lamp;

(14) A silver bowl lamp;

(15) A showcase lamp; and

(16) A traffic signal lamp.

"General service lamp" means a lamp that has an ANSI base; is able to operate at a voltage of 12 volts or 24 volts, at or between 100 to 130 volts, at or between 220 to 240 volts, or of 277 volts for integrated lamps, or is able to operate at any voltage for non-integrated lamps; has an initial lumen output of greater than or equal to 310 lumens (or 232 lumens for modified spectrum general service incandescent lamps) and less than or equal to 3,300 lumens; is not a light fixture; is not an LED downlight retrofit kit; and is used in general lighting applications. General service lamps include, but are not limited to, general service incandescent lamps, compact fluorescent lamps, general service light-emitting diode lamps, and general service organic light-emitting diode lamps. General service lamps do not include:

(1) Appliance lamps;

(2) Black light lamps;

(3) Bug lamps;

(4) Colored lamps;

(5) G shape lamps with a diameter of 5 inches or more as defined in ANSI C79.1-2002;

(6) General service fluorescent lamps;

(7) High intensity discharge lamps;

(8) Infrared lamps;

(9) J, JC, JCD, JCS, JCV, JCX, JD, JS, and JT shape lamps that do not have Edison screw bases;

(10) Lamps that have a wedge base or prefocus base;

3

(11) Left-hand thread lamps;

(12) Marine lamps;

(13) Marine signal service lamps;

(14) Mine service lamps;

(15) MR shape lamps that have a first number symbol equal to 16 (diameter equal to 2 inches) as defined in ANSI C79.1-2002, operate at 12 volts, and have a lumen output greater than or equal to 800;

(16) Other fluorescent lamps;

(17) Plant light lamps;

(18) R20 short lamps;

(19) Reflector lamps that have a first number symbol less than 16 (diameter less than 2 inches) as defined in ANSI C79.1-2002 and that do not have E26/E24, E26d, E26/50x39, E26/53x39, E29/28, E29/53x39, E39, E39d, EP39, or EX39 bases;

(20) S shape or G shape lamps that have a first number symbol less than or equal to 12.5 (diameter less than or equal to 1.5625 inches) as defined in ANSI C79.1-2002;

(21) Sign service lamps;

(22) Silver bowl lamps;

(23) Showcase lamps;

(24) Specialty MR lamps;

(25) T shape lamps that have a first number symbol less than or equal to 8 (diameter less than or equal to 1 inch) as defined in ANSI C79.1-2002, nominal overall length less than 12 inches, and that are not compact fluorescent lamps;

(26) Traffic signal lamps.

"General service light-emitting diode (LED) lamp" means an integrated or non-integrated LED lamp designed for use in general lighting applications and that uses light-emitting diodes as the primary source of light.

"General service organic light-emitting diode (OLED) lamp" means an integrated or non-integrated OLED lamp designed for use in general lighting applications and that uses organic light-emitting diodes as the primary source of light.

"Infrared lamp" means a lamp that is designed and marketed as an infrared lamp; has its highest radiant power peaks in the infrared region of the electromagnetic spectrum (770 nm to 1 mm); has a rated wattage of 125 watts or greater; and which has a primary purpose of providing heat.

4

"Integrated lamp" means a lamp that contains all components necessary for the starting and stable operation of the lamp, does not include any replaceable or interchangeable parts, and is connected directly to a branch circuit through an ANSI base and corresponding ANSI standard lamp-holder (socket).

"LED downlight retrofit kit" means a product designed and marketed to install into an existing downlight, replacing the existing light source and related electrical components, typically employing an ANSI standard lamp base, either integrated or connected to the downlight retrofit by wire leads, and is a retrofit kit. LED downlight retrofit kit does not include integrated lamps or non-integrated lamps.

"Left-hand thread lamp" means a lamp with direction of threads on the lamp base oriented in the left-hand direction.

"Light fixture" means a complete lighting unit consisting of light source(s) and ballast(s) or driver(s) (when applicable) together with the parts designed to distribute the light, to position and protect the light source, and to connect the light source(s) to the power supply.

"Marine lamp" means a lamp that is designed and marketed for use on boats and can operate at or between 12 volts and 13.5 volts.

"Marine signal service lamp" means a lamp that is designed and marketed for marine signal service applications.

"Mine service lamp" means a lamp that is designed and marketed for mine service applications.

"Non-integrated lamp" means a lamp that is not an integrated lamp.

"Other fluorescent lamp" means low pressure mercury electric-discharge sources in which a fluorescing coating transforms some of the ultraviolet energy generated by the mercury discharge into light and include circline lamps and include double-ended lamps with the following characteristics: Lengths from one to eight feet; designed for cold temperature applications; designed for use in reprographic equipment; designed to produce radiation in the ultra-violet region of the spectrum; impact-resistant; reflectorized or aperture; or a CRI of 87 or greater.

"Pin base lamp" means a lamp that uses a base type designated as a single pin base or multiple pin base system.

"Plant light lamp" means a lamp that is designed to promote plant growth by emitting its highest radiant power peaks in the regions of the electromagnetic spectrum that promote photosynthesis: Blue (440 nm to 490 nm) and/or red (620 to 740 nm), and is designed and marketed for plant growing applications.

"Reflector lamp" means a lamp that has an R, PAR, BPAR, BR, ER, MR, or similar bulb shape as defined in ANSI C78.20-2003 and ANSI C79.1-2002 and is used to provide directional light.

"Showcase lamp" means a lamp that has a T shape as specified in ANSI C78.20-2003 and ANSI C79.1-2002, is designed and marketed as a showcase lamp, and has a maximum rated wattage of 75 watts.

"Sign service lamp" means a vacuum type or gas-filled lamp that has sufficiently low bulb temperature to permit exposed outdoor use on high-speed flashing circuits, is designed and marketed as a sign service lamp, and has a maximum rated wattage of 15 watts.

"Silver bowl lamp" means a lamp that has an opaque reflective coating applied directly to part of the bulb surface that reflects light toward the lamp base and that is designed and marketed as a silver bowl lamp.

"Specialty multifaceted reflector (MR) lamp" means a lamp that has an MR shape as defined in ANSI C79.1-2002, a diameter of less than or equal to 2.25 inches, a lifetime of less than or equal to 300 hours, and that is designed and marketed for a specialty application.

"Traffic signal lamp" means a lamp that is designed and marketed for traffic signal applications and has a lifetime of 8,000 hours or greater.

## …[skipping (l)-(m)]

### (n) Luminaires and Torchieres.

## …[skipping "Art work luminaire" through "Automatic daylight control"]

~~"Correlated Color temperature (CCT)" means the color appearance, or actual color of the lamp in accordance with IES LM-16-1993.~~

## …[skipping through the end of the section]

Note: Authority cited: Sections 25213, 25218(e), 25401.9(b), 25402(a)-25402(c), and 25960, Public Resources Code; and sections 16, 26, and 30, Governor's Exec. Order No. B-29-15 (April 1, 2015).

Reference: Sections 25216.5(d), 25401.9(b), 25402(a)-25402(c), 25402.5.4, and 25960, Public Resources Code; and section 16, Governor's Exec. Order No. B-29-15 (April 1, 2015).

## § 1602.1. Rules of Construction. [No changes]

## § 1603. Testing: All Appliances. [No changes]

## § 1604. Test Methods for Specific Appliances

### …[skipping (a)-(j)]

#### (k) Lamps.

(1) The test method for ~~federally regulated general service fluorescent lamps, federally regulated~~ general service incandescent lamps, ~~and federally regulated~~ incandescent reflector lamps, and federally regulated general service fluorescent lamps is 10 C.F.R. section 430.23(r) (Appendix R to subpart B of part 430).

~~(2) The test method for state-regulated small diameter directional lamps that use incandescent filament technology is 10 C.F.R. section 430.23(r) (Appendix R to subpart B of part 430).~~

(~~3~~2) The test method for ~~medium base~~ compact fluorescent lamps is 10 C.F.R. section 430.23(y) (Appendix W to subpart B of part 430).

(~~4~~3) The test method~~s~~ for integrated LED ~~state-regulated small diameter directional lamps and state-regulated LED~~ lamps ~~are~~ is 10 C.F.R. section 430.23(ee) (Appendix BB to subpart B of part 430)~~shown in Table K-1~~. For certification, compliance, and enforcement purposes, the sampling provisions in 10 C.F.R. section 429.56 shall be used.

(4) The optional test methods for state-regulated small diameter directional lamps and state-regulated LED lamps are shown in Table K-1. Optional test procedures are conditionally required depending on manufacturer claims of performance as described in sections 1607(d)(13) of this Article and 1606 Table X of this Article. For certification, compliance, and enforcement purposes, the sampling provisions in 10 C.F.R. section 429.56 shall be used.

**Table K-1**
**Optional Test Methods for State-Regulated LED Lamps and
LED State-Regulated Small Diameter Directional Lamps**

| *Measurement* | *Test Procedure* | *Required or Optional* |
|---|---|---|
| | | |
| ~~Input power, Lumen output, LPW, Correlated Color Temperature, Duv, Color Rendering Index, Power Factor~~ | ~~IES LM-79 (2008) with additional requirements provided in 10 C.F.R. section 430.23(ee) (Appendix BB to subpart B of part 430).~~ | ~~Required~~ |
| ~~Lumen Maintenance and Time to Failure~~ | ~~IES LM-84 (2014) and TM-28 (2014) with additional requirements provided in 10 C.F.R. section 430.23(ee) (Appendix BB to subpart B of part 430).~~ | ~~Required~~ |
| ~~Standby Power~~ | ~~10 C.F.R. section 430.23(ee) (Appendix BB to subpart B of part 430).~~ | ~~Required~~ |
| Flicker | Title 24, part 6, Joint Appendix 10 (2015), tested at both 100~~%~~ percent and 20~~%~~ percent output. Lamps with a percent amplitude modulation (percent flicker) less than 30 percent at frequencies less than 200 Hz shall report "yes" | ~~Optional~~ |

| | for "reduced flicker operation" described in section 1606 of this Article, otherwise report "no". | |
|---|---|---|
| Lumen Maintenance, Rated Life, and Survival Rate for Compliance with Title 24 Joint Appendix 8 and minimum dimming level | Title 24, part 6, Joint Appendix 8 (2015). | ~~Optional~~ |
| Audible Noise | ENERGY STAR Recommended Practice – Noise (2013) with the following modification: measurements shall be taken at 100 percent output as well as at 20 percent output if dimmable. | ~~Optional~~ |

~~* Required test procedures must be conducted per section 1603(a) of this Article for each basic model of lamp. Optional test procedures are conditionally required depending on manufacturer claims of performance as described in sections 1607(d)(1312) of this Article and 1606 Table X of this Article.~~

(5) ~~There are no federally prescribed test methods for federally regulated organic light-emitting diode (OLED) lamps; federally regulated candelabra base incandescent lamps, or federally regulated intermediate base incandescent lamps.~~The test method for general service lamps that are other than lamp types described in sections 1604(k)(1) through 1604(k)(3) of this Article is 10 C.F.R. section 430.23(gg) (Appendix DD to Subpart B of part 430).

## …[skipping (l)-(y)]

The following documents are incorporated by reference in section 1604.

## …[skipping CALIFORNIA ENERGY COMMISSION TEST METHODS]

**FEDERAL TEST METHODS**

C.F.R., Title 10, section 429.56

C.F.R., Title 10, section 430.23, and 10 C.F.R. Appendixes A, B, C1, D1, D2, E, F, H, I, J1, J2, M, N, O, P, Q, R, S, T, U, V, W, X, S1, Y, Z, AA, BB, ~~and~~ CC, and DD of subpart B of part 430

## …[skipping through the end of the section]

Note: Authority cited: Sections 25213, 25218(e), 25401.9(b), 25402(a)-25402(c), and 25960, Public Resources Code; and sections 16, 26, and 30, Governor's Exec. Order No. B-29-15 (April 1, 2015). Reference: Sections 25216.5(d), 25401.9(b), 25402(a)-25402(c) and 25960, Public Resources Code; and section 16, Governor's Exec. Order No. B-29-15 (April 1, 2015).

## § 1605. Energy Performance, Energy Design, Water Performance, and Water Design Standards: In General. [No changes]

## § 1605.1. Federal and State Standards for Federally Regulated Appliances.

## …[skipping (a)-(j)]

### (k) Lamps.

### …[skipping (k)(1)]

(2) ~~Federally Regulated~~ Incandescent Reflector Lamps ~~Manufactured On or After July 15, 2012.~~

(A) The average lamp efficacy of federally -regulated incandescent reflector lamps with a rated lamp wattage between 40-205 watts, and manufactured on or after July 15, 2012, and sold before January 1, 2020, shall be not less than the applicable values shown in Table K-3., ~~subject to the following:~~

~~(A) The standards specified in Table K-3 shall apply with respect to:~~

~~1. ER incandescent reflector lamps, BR incandescent reflector lamps, BPAR incandescent reflector lamps, and similar bulb shapes on and after January 1, 2008; and~~

~~2. Incandescent reflector lamps with a diameter of more than 2.25 inches, but not more than 2.75 inches, on and after June 15, 2008.~~

**EXCEPTION to Section 1605.1(k)(2)(A).** The standards specified in Table K-3 shall not apply to the following types of incandescent reflector lamps:

(1) Lamps rated at 50 watts or less that are ER30, BR30, BR40, or ER40;

(2) Lamps rated at 65 watts that are BR30, BR40, or ER40 lamps; or

(3) R20 incandescent reflector lamps rated 45 watts or less.

**Table K-3**
**Standards for Federally Regulated Incandescent Reflector Lamps Manufactured On or After July 15, 2012, and Sold Before January 1, 2020**

| Lamp Spectrum | Lamp Diameter (inches) | Rated Voltage | Minimum Average Lamp Efficacy (LPW)[1] |
|---|---|---|---|
| Standard Spectrum | > 2.5 | ≥ 125 | $6.8 \times P^{0.27}$ |
| | | < 125 | $5.9 \times P^{0.27}$ |
| | ≤ 2.5 | ≥ 125 | $5.7 \times P^{0.27}$ |
| | | < 125 | $5.0 \times P^{0.27}$ |
| Modified Spectrum | > 2.5 | ≥ 125 | $5.8 \times P^{0.27}$ |
| | | < 125 | $5.0 \times P^{0.27}$ |
| | ≤ 2.5 | ≥ 125 | $4.9 \times P^{0.27}$ |
| | | < 125 | $4.2 \times P^{0.27}$ |
| [1]P = Rated Lamp Wattage, in Watts | | | |

9

(B) See sections 1605.1(k)(6) and 1605.3(k)(1)(B) for energy efficiency standards for incandescent reflector lamps that are general service lamps and sold on or after January 1, 2020.

(3) **Medium Base Compact Fluorescent Lamps.**

(A) A bare lamp or covered lamp (no reflector) medium base compact fluorescent lamp manufactured on or after January 1, 2006, and sold before January 1, 2020, shall meet the requirements set forth in Table K-4.

**Table K-4**
**Standards for Medium Base Compact Fluorescent Lamps Manufactured On or After January 1, 2006, and Sold Before January 1, 2020**

| Factor | Requirements |
|---|---|
| *Labeled Wattage (Watts) and Configuration[1]* | *Measured Initial Lamp Efficacy: lumens/watt must be at least:[2]* |
| *Bare Lamp:* | |
| Labeled Wattage < 15 | 45.0 |
| Labeled Wattage ≥ 15 | 60.0 |
| *Covered Lamp (no reflector)* | |
| Labeled Wattage < 15 | 40.0 |
| 15 ≥ Labeled Wattage < 19 | 48.0 |
| 19 ≥ Labeled Wattage < 25 | 50.0 |
| Labeled Wattage ≥ 25 | 55.0 |
| Lumen Maintenance at 1,000-hours | ≥90% |
| Lumen Maintenance at 40% of Lifetime[2] | 80% |
| Rapid Cycle Stress Test | Each lamp must be cycled once for every two hours of lifetime.[2] At least 5 lamps must meet or exceed the minimum number of cycles. |
| Lifetime[2] | ≥ 6,000 |
| [1] Use labeled wattage to determine the appropriate efficacy requirements in this table; do not use measured wattage for this purpose. | |
| [2] Lifetime refers to lifetime of a compact fluorescent lamp as defined in section 1602(k) of this Article. | |

(B) See sections 1605.1(k)(6) and 1605.3(k)(1)(B) for energy efficiency standards for compact fluorescent lamps that are general service lamps and sold on or after January 1, 2020.

(4) ~~Federally Regulated~~ General Service Incandescent Lamps and Modified Spectrum General Service Incandescent Lamps.

(A) The energy consumption rate of federally regulated general service incandescent lamps and modified spectrum general service incandescent lamps, manufactured on or after the effective dates shown and sold before January 1, 2020, shall be no greater than the maximum rated wattage shown in Tables K-5 and K-6.

~~(A)~~1. These standards apply to each lamp that:

~~1.~~a. is intended for a general service or general illumination application (whether incandescent or not);

~~2.~~b. has a medium screw base or any other screw base not defined in ANSI C81.61-2006; and

~~3.~~c. is capable of being operated at a voltage at least partially within the range of 110 to 130 volts~~; and~~

~~4. is manufactured or imported after December 31, 2011.~~

~~(B)~~2. Each lamp described in section 160~~4~~5.1(k)(4)(A)1. of this Article shall have a color rendering index that is greater than or equal to:

~~1.~~a. 80 for nonmodified spectrum lamps; or

~~2.~~b. 75 for modified spectrum lamps.

**Table K-5**
**Standards for Federally Regulated General Service Incandescent Lamps Manufactured On or After the Effective Date Shown Below, and Sold Before January 1, 2020**

| Rated Lumen Ranges | Maximum Rate Wattage | Minimum Rate Lifetime | Effective Date |
|---|---|---|---|
| 1490-2600 | 72 | 1,000 hours | January 1, 2012 |
| 1050 – 1489 | 53 | 1,000 hours | January 1, 2013 |
| 750 – 1049 | 43 | 1,000 hours | January 1, 2014 |
| 310 – 749 | 29 | 1,000 hours | January 1, 2014 |

**Table K-6**
**Standards for Federally Regulated Modified Spectrum General Service Incandescent Lamps**
**Manufactured On or After the Effective Date Shown Below, and Sold Before January 1, 2020**

| Rated Lumen Ranges | Maximum Rate Wattage | Minimum Rate Lifetime | Effective Date |
|---|---|---|---|
| 1118-1950 | 72 | 1,000 hours | January 1, 2012 |
| 788-1117 | 53 | 1,000 hours | January 1, 2013 |
| 563-787 | 43 | 1,000 hours | January 1, 2014 |
| 232-562 | 29 | 1,000 hours | January 1, 2014 |

(B) See sections 1605.1(k)(6) and 1605.3(k)(1)(B) for energy efficiency standards for general service incandescent lamps that are general service lamps and sold on or after January 1, 2020.

(5) **Candelabra Base Incandescent Lamps and Intermediate Base Incandescent Lamps.**

(A) The energy consumption rate of federally regulated candelabra base incandescent lamps and intermediate base incandescent lamps, manufactured on or after January 1, 2012, and sold before January 1, 2020, shall be no greater than the maximum rated wattage shown in Table K-7.

**Table K-7**
**Standards for Federally Regulated Candelabra Base Incandescent Lamps and Intermediate Base Incandescent Lamps Manufactured On or After January 1, 2012, and Sold Before January 1, 2020**

| Lamp Base Type | Maximum Rated Wattage |
|---|---|
| Candelabra | 60 |
| Intermediate | 40 |

(B) See sections 1605.1(k)(6) and 1605.3(k)(1)(B) for energy efficiency standards for candelabra base incandescent lamps and intermediate base incandescent lamps that are general service lamps and sold on or after January 1, 2020.

(6) **General Service Lamps.** General service lamps sold on or after January 1, 2020, shall have a minimum lamp efficacy of 45 lumens per watt.

## …[skipping through the end of the section]

Note: Authority cited: Sections 25213, 25218(e), 25401.9(b), 25402(a)-25402(c), and 25960, Public Resources Code; and sections 16, 26, and 30, Governor's Exec. Order No. B-29-15 (April 1, 2015).

Reference: Sections 25216.5(d), 25401.9(b), 25402(a)-25402(c), and 25960, Public Resources Code; and section 16, Governor's Exec. Order No. B-29-15 (April 1, 2015).

## § 1605.2. State Standards for Federally Regulated Appliances. [No changes]

## § 1605.3. State Standards for Non-Federally-Regulated Appliances.

## …[skipping (a)-(j)]

### (k) Lamps.

(1) Incandescent Reflector Lamps. See section 1605.1(k)(2) for standards for federally regulated incandescent reflector lamps.

(2)(1) Standards for State-Regulated LED Lamps and **General Service Lamps.**

(A) General service lamps manufactured on or after January 1, 2018, and sold before January 1, 2020, shall meet the standards shown in Table K-8. The energy consumption rate of state-regulated LED lamps with a lumen output of 150 lumens or greater for candelabra bases, or 200 lumens or greater for other bases, manufactured on or after the effective dates shown in Table K-9 shall meet the standards shown in that table.

**Table K-8**
**Standards for ~~State-Regulated~~ General Service Lamps - Tier II**

| Lumen Ranges | Minimum Lamp Efficacy | Minimum Rated Lifetime | Effective Date |
|---|---|---|---|
| 310-2600 | 45 lumens per watt | 1,000 Hours | Manufactured on or after January, 1, 2018, and sold before January 1, 2020 |

(B) General service lamps sold on or after January 1, 2020, shall have a minimum lamp efficacy of 45 lumens per watt.

(2) **State-Regulated LED Lamps.**

(A) State-regulated LED lamps with lumen output of 150 lumens or greater for ~~candelabra~~E12 bases, or 200 lumens or greater for ~~other~~E17, E26, and GU24 bases, and manufactured on or after January 1, 2018, shall meet all of the standards shown in Table K-9 and shall have the following:

~~(i)~~1. A color point that meets the requirements in Table B1 of Annex B of ANSI C78.377-2015 for color targets and color consistency.

~~(ii)~~2. A CRI (Ra) of 82 or greater.

~~(iii)~~3. Individual color scores of R1, R2, R3, R4, R5, R6, R7, and R8 of 72 or greater.

14

(iv)4. A power factor of 0.7 or greater.

(v)5. A rated life of 10,000 hours or greater as determined by the lumen maintenance and time to failure test procedure.

(vi)6. State-regulated LED lamps that have an ANSI standard lamp shape of A shall meet the omnidirectional light distribution requirements of ENERGY STAR's Product Specification for Lamps Version 2.0 (December 2015).

(vii)7. State-regulated LED lamps that have an ANSI standard lamp shape of B, BA, C, CA, F, or G shall meet the decorative light distribution requirements of ENERGY STAR's Product Specification for Lamps Version 1.1 (August 2014).

(B) In addition to the requirements in section 1605.3(k)(2)(A) of this Article, state-regulated LED lamps manufactured on or after July 1, 2019 shall have a standby mode power of 0.2 watt or less.

**Table K-9**
**Standards for State-Regulated LED Lamps**

| Effective Date | Minimum Compliance Score | Minimum Efficacy Lumens Per Watt |
|---|---|---|
| January 1, 2018 | 282 | 68 |
| July 1, 2019 | 297 | 80 |
| This compliance score shall be calculated as the sum of the efficacy and 2.3 times the CRI of a lamp. | | |

(3) **State-regulated Small Diameter Directional Lamps.** State-regulated small diameter directional lamps manufactured on or after January 1, 2018 must have a rated life of 25,000 hours or greater as determined by the lumen maintenance and time to failure test procedure and meet one of the following requirements:

(A) have luminous efficacy of at least 80 lumens per watt.

(B) have a minimum luminous efficacy of 70 lumens per watt or greater and a minimum compliance score of 165 or greater, where compliance is calculated as the sum of the luminous efficacy and CRI.

(4) **GU24 Base Lamps.** GU24 base lamps shall not be incandescent lamps.

(5) See section 1605.1(k) of this Article for energy efficiency standards for federally regulated lamps.

## …[skipping through the end of the section]

Note: Authority cited: Sections 25213, 25218(e), 25401.9(b), 25402(a)-25402(c), and 25960, Public Resources Code; and sections 16, 26, and 30, Governor's Exec. Order No. B-29-15 (April 1, 2015).

Reference: Sections 25216.5(d), 25401.9(b), 25402(a)-25402(c) and 25960, Public Resources Code; and section 16, Governor's Exec. Order No. B-29-15 (April 1, 2015).

## § 1606. Filing by Manufacturers; Listing of Appliances in the MAEDbS.

### (a) Filing of Statements.

Each manufacturer shall electronically file with the Executive Director through the MAEDbS a statement for each appliance that is sold or offered for sale in California. The statement shall contain all of the information described in paragraphs (2) through (4) of this subsection and shall meet all of the requirements of paragraph (1) of this subsection and all other applicable requirements in this Article.

The effective dates of this section shall be the same as the effective dates shown in section 1605.1, 1605.2 or 1605.3 of this Article for appliances for which there is an energy efficiency, energy consumption, energy design, water efficiency, water consumption, or water design standard in section 1605.1, 1605.2, or 1605.3 of this Article. For appliances with no energy efficiency, energy consumption, energy design, water efficiency, water consumption, or water design standard in section 1605.1, 1605.2, or 1605.3 of this Article, the effective date of this section shall be one year after they are added to section 1601 of this Article, unless a different effective date is specified.

**EXCEPTIONS to Section 1606(a) of this Article:** Section 1606(a) of this Article is not applicable to:

1. external power supplies,

2. small electric motors, ~~or~~

3. à la carte chargers meeting the EXCEPTION noted in section 1605.3(w)(2) of this Article~~.~~, or

4. general service lamps.

## …[skipping (a)(1)(A) through (a)(3)]

## …[skipping to Table X]

16

**Table X**

**Data Submittal Requirements**

| | Appliance | Required Information | Permissible Answers |
|---|---|---|---|
| | | * Manufacturer's Name | |
| | | * Brand Name | |
| | | * Model Number | |
| | All Appliances | Date model to be displayed | |
| | | Regulatory Status | Federally regulated consumer product, federally regulated commercial and industrial equipment, non-federally regulated |

## …[skipping A through K]

| | Appliance | Required Information | Permissible Answers |
|---|---|---|---|
| K | Federally regulated general service fluorescent lamps | *Type | 4-foot medium bipin general service fluorescent lamp, 2-foot U-shaped general service fluorescent lamp, 8-foot slim line general service fluorescent lamp, 8-foot high output general service fluorescent lamp, 4-foot miniature bipin standard output general service fluorescent lamp, 4-foot miniature bipin high output general service fluorescent lamp |
| | | Rated Color Rendering Index | |
| | | Correlated Color Temperature (for lamps manufactured on or after July 15, 2012) | |
| | | Minimum Average Lamp Efficacy (LPW) | |
| | Federally regulated incandescent reflector lamps sold before January 1, 2020 | Minimum Average Lamp Efficacy | |
| | Federally regulated Medium Screw Base Compact Fluorescent | Lamp Power (Watts) | |
| | | Minimum Efficacy (LPW) | |
| | | Lamp Configuration | Bare or Covered (no reflector) |

17

| Lamps sold before January 1, 2020 | 1,000 Hour Lumen Maintenance | True, False |
|---|---|---|
| | Lumen Maintenance Requirements | True, False |
| | Rapid Cycle Stress Test | True, False |
| | Average Rated Lamp Life | True, False |
| Federally regulated Medium Screw Base General Service Incandescent and OLED Lamps; OLEDs sold before January 1, 2020 | Type | General Service Incandescent, LED, OLED |
| | Voltage Range | |
| | Rated Lumen Range | |
| | Maximum Rate Wattage | |
| | Minimum Rate Lifetime | |
| | Color Rendering Index | |
| | Minimum Efficacy (LPW) (required on or after January 1, 2018) | |
| | Modified Spectrum | True, False |
| | Bulb Finish (incandescent only) | Clear, frost, soft white |
| | ANSI-designated Bulb Shape | A15, A19, A21, A23, A25, PS25, PS30, BT14.5, BT15, CP19, TB19, CA22 |
| Federally regulated Candelabra Base and Intermediate Base Incandescent Lamps sold before January 1, 2020 | Base Type | Candelabra, intermediate |
| | Maximum Rated Wattage | |
| Federally regulated Medium Screw Base Modified Spectrum General Service Incandescent Lamps sold before January 1, 2020 | Type | |
| | Rated Voltage | |
| | Rated Lumen Range | |
| | Maximum Rate Wattage | |
| | Minimum Rate Lifetime | |
| | Color Rendering Index | |
| State-regulated medium screw base general service Compact | Rated lumens | |
| | Rated lamp wattage | |

18

| ~~Fluorescent lamps~~ | ~~Average lamp efficacy~~ | |
|---|---|---|
| State-regulated small diameter directional lamps | Base Type | |
| | Lamp Type (examples PAR16, MR11, MR16, R) | |
| | Lamp Power (Watts) | |
| | Lamp Output (Lumens) | |
| | Beam Angle | |
| | Center Beam Candle Power (CBCP) | |
| | Efficacy (Lumens per watt) | |
| | Color Rendering Index (CRI) | |
| | Combined CRI + Efficacy (only applies where efficacy < 80 LPW) | |
| | Correlated Color Temperature | |
| | Rated Lifetime Test Completed | True, False |
| | Estimated Rated Lifetime (hours) (when "Rated Lifetime Test Completed" = False) | |
| | Rated Lifetime (hours) (when "Rated Lifetime Test Completed" = True) | |
| State-regulated Light Emitting Diode (LED) lamps | *Base Type | E12, E17, E26, GU24, retrofit kit |
| | Lamp Shape | A, B, BA, C, CA, F, G, Other |
| | Dimmable | True, False |
| | Minimum Dimming Level (%) (~~if~~when "Dimmable" ~~=~~equals True) | |
| | Reduced Flicker Operation (~~if~~when "Dimmable" ~~=~~equals True) | True, False |
| | Correlated Color Temperature | |
| | Duv | |
| | Rated Lifetime Test Completed | True, False |
| | Estimated Rated Lifetime (hours) (when "Rated Lifetime Test Completed" = False) | |

19

| | | |
|---|---|---|
| | Rated Lifetime (hours) (when "Rated Lifetime Test Completed" = True) | |
| | Lifetime test environment temperature[2] | Ambient, Elevated |
| | Lamp Power (Watts) | |
| | Lumen Output (Lumens) | |
| | Efficacy (Lumens per watt) | |
| | Color Rendering Index (Ra) | |
| | Compliance Score | |
| | Power Factor | |
| | Standby Mode | True, False |
| | Standby Power (watts) (if applicable) | |
| | Connected network type (if applicable) | Wi-Fi, ZigBee, ANT, Bluetooth, RF, Wired, Other (specify) |
| | $R_1$ | |
| | $R_2$ | |
| | $R_3$ | |
| | $R_4$ | |
| | $R_5$ | |
| | $R_6$ | |
| | $R_7$ | |
| | $R_8$ | |
| | $R_9$ [2] | |
| | Meets applicable luminous intensity distribution requirements | ENERGY STAR Omnidirectional, ENERGY STAR Decorative, none. |
| | Audible Noise at 100% output (decibels) (if when "Dimmable" = equals True) | |
| | Audible Noise at 20% output (decibels) (if when "Dimmable" = equals True) | |
| | Start Time [2] | |

20

| | | 6000 hour lumen maintenance [2] | |
|---|---|---|---|
| | | 6000 hour survival rate [2] | |
| | | Projected time to L70 [2] | |
| | | Dimming Control Compatibility (if~~when~~ "Dimmable" ~~=~~equals True) | Forward, Phase cut control, reverse phase cut, powerline carrier, digital, 0-10 VDC, other~~.~~ |
| | | NEMA SSL 7A Compatible [2] (If compatible with forward phase cut dimmer control answer "True," If not answer "False.") | True, False |

\* "Identifier" information as described in section 1602(a) of this Article.

1 = Voluntary for federally-regulated appliances

2 = Voluntary for state-regulated appliances

## …[skipping remaining text in Table X through end of section 1606]

Note: Authority cited: Sections 25213, 25218(e), 25401.9(b), 25402(a)-25402(c), and 25960, Public Resources Code; and sections 16, 26, and 30, Governor's Exec. Order No. B-29-15 (April 1, 2015).

Reference: Sections 25216.5(d), 25401.9(b), 25402(a)-25402(c), 25402.5.4, and 25960, Public Resources Code; and section 16, Governor's Exec. Order No. B-29-15 (April 1, 2015).

## § 1607. Marking of Appliances. [no changes]

## § 1608. Compliance, Enforcement, and General Administrative Matters.

### (a) General Requirements for the Sale or Installation of All Appliances.

Any unit of any appliance within the scope of section 1601 of this Article may be sold or offered for sale in California only if:

(1) the appliance appears in the most recent MAEDbS established pursuant to section 1606(c) of this Article, unless the only reason for the appliance's absence from the MAEDbS is its failure to comply with an applicable standard in section 1605.1 of this Article;

(2) the manufacturer has:

(A) tested the appliance as required by sections 1603 and 1604 of this Article;

(B) marked the unit as required by section 1607 of this Article;

(C) for any appliance for which there is an applicable standard in section 1605.2 or 1605.3 of this Article, certified under section 1606(a) of this Article that the appliance complies with the standard;

21

(3) the unit has the same components, design characteristics, and all other features that affect energy or water consumption or energy or water efficiency, as applicable, as the units that were tested under sections 1603 and 1604 of this Article and for which information was submitted under section 1606(a) of this Article; and

(4) for any appliance for which there is an applicable standard in section 1605.2 or 1605.3 of this Article, the unit complies with the standard.

**EXCEPTIONS to Sections 1608(a)(1) and 1608(a)(2)(C) of this Article.** Sections 1608(a)(1) and 1608(a)(2)(C) of this Article are not applicable to:

1. external power supplies,

2. small electric motors, ~~or~~

3. à la carte chargers meeting the EXCEPTION noted in section 1605.3(w)(2) of this Article~~.~~, or

<u>4. general service lamps.</u>

## …[skipping through the end of the section]

Authority cited: Sections 25213, 25218(e), 25402(a)-(c) and 25960, Public Resources Code.

Reference: Sections 25216.5(d), 25402(a)-(c) and 25960, Public Resources Code).

## § 1609. Administrative Civil Penalties. [No changes]

**EXHIBIT B**

**Incandescent Reflector Lamp Bulb Shapes**

**(42 U.S.C. §6291(30)(C)(ii))**



"R" Reflector Lamp



"BR" Shape "Bulged" Reflector Lamp



"PAR" Shape "Parabolic Aluminized" Reflector Lamp



"ER" Shape Elliptical Reflector Lamp

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT C**

**Specialty Shape Lamps and Applications "Not Include[d]" in Definition of**

**General Service Incandescent Lamp and General Service Lamp**

| WHAT IS NOT A GENERAL SERVICE LAMP? 42 U.S.C. § 6291(30)(BB)(ii)(I)(definition "does not include the following") | |
|---|---|
| Appliance Lamp 42 U.S.C. § 6291(30)(D)(ii)(I) | Black Light Lamp 42 U.S.C. § 6291(30)(D)(ii)(II) |
|  |  |
| Bug Lamp 42 U.S.C. § 6291(30)(D)(ii)(III) | Colored Lamp 42 U.S.C. § 6291(30)(D)(ii)(IV) |
|  |  |

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| Infrared (heat) Lamp<br>42 U.S.C. § 6291(30)(D)(ii)(V) | Left-handed thread lamp<br>42 U.S.C. § 6291(30)(D)(ii)(VI) |
|---|---|
| | |
| Marine signal service lamp<br>42 U.S.C. § 6291(30)(D)(ii)(VIII) | Plant Light Lamp<br>42 U.S.C. § 6291(30)(D)(ii)(X) |
| | |

32

| Reflector Lamp<br>42 U.S.C. § 6291(30)(D)(ii)(XI) | Incandescent Reflector Lamp<br>42 U.S.C. § 6291(30)(D)(ii)(XI)<br>42 U.S.C. § 6291(30)(BB)(ii)(II) |
|---|---|
|  |  |
| Rough Service Lamp<br>42 U.S.C. § 6291(30)(D)(ii)(XII) | Shatter-resistant Lamp<br>42 U.S.C. § 6291(30)(D)(ii)(XIII) |
|  |  |

33

| Sign Service Lamp<br>42 U.S.C. § 6291(30)(D)(ii)(XIV) | Silver Bowl Lamp<br>42 U.S.C. § 6291(30)(D)(ii)(XV) |
|---|---|
|  |  |
| Showcase Lamp<br>42 U.S.C. § 6291(30)(D)(ii)(XVI) | 3-way lamp<br>42 U.S.C. § 6291(30)(D)(ii)(XVII) |
|  |  |

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| Traffic Signal Lamp<br>42 U.S.C. § 6291(30)(D)(ii)(XVIII) | Vibration Service Lamp<br>42 U.S.C. § 6291(30)(D)(ii)(XIX) |
|---|---|
|  |  |
| G shape lamp (globe)<br>42 U.S.C. § 6291(30)(D)(ii)(XX and XXII) | T shape lamp (tubular)<br>42 U.S.C. § 6291(30)(D)(ii)(XXI) |
|  |  |

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| Candle shape lamps (B, BA, CA, F) 42 U.S.C. § 6291(30)(D)(ii)(XXII) | General service fluorescent lamp 42 U.S.C. § 6291(30)(BB)(ii)(II) |
|---|---|
|  |  |
| Mine service lamp 42 U.S.C. § 6291(30)(D)(ii)(IX) | |
|  | |

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

2

**EXHIBIT D**

3

**Standard incandescent or halogen type lamp**

4

**General Service Incandescent Lamp**

5

**(42 U.S.C. §6291(30)(D)(i))**

6

https://www.energy.gov/energysaver/save-electricity-and-fuel/lighting-choices-

7

save-you-money/incandescent-lighting

8

9



10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

37

1

2 **EXHIBIT E**

3 **Candelabra Screw Base Lamp and Applications**

4 Candelabra Base "CA" Shape Lamp



Candelabra Base Globe "G-25" Shape Lamp



Candelabra Base "B" (Bullet or Torpedo) Shape Lamp



VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

2          Decorative Lighting Fixture with Candelabra Base "BA" Shape Bulb

3

4

5

6

7          

8

9

10

11

12

13          Decorative Lighting Fixture with Candelabra Base Globe G-16-1/2 Shape Bulb

14

15

16

17          

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

2

**EXHIBIT F**

3

**Intermediate Screw Base Lamp and Applications**

4

Intermediate Base Fan Light

5

6



7

8

9

Intermediate Base Appliance Lamp in refrigerator

10

11

12

13

14



15

16

17

18

19

Intermediate Base Showcase Lamp in Furniture

20

21



22

23

24

25

26

27

28

40